# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4265 | **DATE** | 11/19/2004 |
| **CASE TITLE** | Cross vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants the defendants' motion for summary judgment (38-1) as to counts three, six, seven, eight, and nine but denies the motion as to counts one, two, four, five, and ten. The parties are reminded that the final pretrial order is due on 12/1/04, and that it must include both motions in limine and responses, to be exchanged by the parties before that date. The final pretrial conference is set for 12/3/04 at 11:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | NOV 2 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| OR | courtroom deputy's initials | 2004 NOV 23 AM 3:45 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LEE CROSS,                                )
                                          )
        Plaintiff,            )
                                          )
        v.                    )      Case No. 03 C 4265
                                          )
CITY OF CHICAGO and the Chicago           )
Police OFFICER RUBIN WEBER, Star          )
No. 19588, and OFFICER KRISTI             )
BATTALINI, Star No. 16027,                )
                                          )
        Defendants.           )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Lee Cross has sued the City of Chicago and Chicago Police Officers Rubin Weber and Kristi Battalini in a ten count second amended complaint pursuant to 42 U.S.C. § 1983 and Illinois law. Cross alleges that the officers violated his Fourth Amendment rights and his rights under Illinois law to be free from unlawful searches, arrests, and seizures of property.

Defendants have moved for summary judgment on all counts. For the reasons set forth below, the Court denies defendants' motion in part and grants it in part.

### Facts and Discussion

Summary judgment may only be granted when there are no genuine issues of material fact in dispute and when the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In considering a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party and draws reasonable inferences in favor of that party.

1

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Cross bases his complaint on three separate incidents involving Weber and Battalini. The Court will consider each incident separately and in the order Cross refers to them in his second amended complaint.

**1.     Counts 1, 4, and 6: February 6, 2003 Search and Seizure**

On February 6, 2003, Officers Weber and Battalini were conducting a routine patrol of the Uptown area when they claim that a man on the street told them that he observed a "large black male [who] was selling drugs at the corner of Broadway and Lawrence." Def. 56.1(a)(3) Stmt. ¶ 36. After allegedly receiving this tip, Weber and Battalini claim that they drove toward Broadway and Lawrence, where they saw a man fitting the description given to them by the anonymous informant. The defendants recognized the man as Lee Cross, an individual they had arrested several times in the past for narcotics violations. They claim that Cross spotted them and then ducked into a nearby liquor store. *Id.* ¶ 42. They continued to watch Cross as he came out of the store several minutes later without any purchases. *Id.* ¶ 44. The officers then approached Cross and began to ask him questions. They claim that Cross was agitated by their questions, though Cross denies this. Pl. Resp. to Def. 56.1(a)(3) Stmt. ¶ 44.

After asking Cross several questions, Weber and Battalini performed a protective pat-down search. Def. 56.1(a)(3) Stmt. ¶ 46. They assert that the pat-down search was justified by Cross' size, agitated demeanor, their reasonable suspicion that he was engaging in criminal activity, and their location in a high crime area. *Id.* Cross argues that the search was not justified because the officers did not have a reasonable basis to believe he was armed. Pl. Resp. at 5.

In the course of the search, Weber felt a large "wad" in the front pocket of Cross' pants

2

and asked what it was to which Cross responded "money." *Id.* ¶ 48. When asked where he got

the money, Cross said it was from his job at Renzenberger, Inc. *Id.* ¶ 50. When Weber called

Renzenberger to confirm this, however, he was told that Cross was not an employee. *Id.* ¶ 52.

The officers then confiscated the money, totaling $752, to take it to the station for a dog sniff test

for narcotics. *Id.* ¶ 54. The officers claim that the money did not come out of Cross' pocket until

they informed him of the dog sniff test. *Id.* ¶ 53. Cross, however, claims that Weber removed the

money from his pocket as soon as he felt it during the search. Pl. Resp. to Def. 56.1(a)(3) Stmt. ¶

53.[1]

Cross rode with the defendants in their police car to the 23rd District police station. At the

station, a trained dog identified narcotics on Cross' money. Pl. Resp. to Def. 56.1(a)(3) Stmt. ¶

62. As a result, the defendants informed him that his money was going to be confiscated and

inventoried. Weber had confiscated and inventoried money belonging to Cross in the same way

as a result of the December 13, 2001 arrest. *Id.* ¶ 65. Cross got an inventory slip for his money

and left the station. It is undisputed that Cross was never arrested or charged with any crime

during the February 6, 2003 incident. *Id.* ¶¶ 56-57.

## A.    Federal claims

Cross makes two § 1983 claims in connection with the February 6, 2003 incident: Fourth

Amendment violations for illegal search and seizure (count one) and a Fourth Amendment

violation for false arrest (count four). The defendants are entitled to summary judgment on these

claims if there is no dispute over the material facts and no reasonable jury could find that they

---

[1]Because Weber allegedly reached into Cross' pocket during the search, Cross claims that
the search was a full-blown search requiring probable cause, not merely a pat-down search which
requires only reasonable suspicion. Pl. Resp. at 5.

violated the Fourth Amendment. Therefore, the Court must first determine whether any facts material to the § 1983 Fourth Amendment claims are disputed.

The starting point for an analysis of Cross' federal claims must be whether Weber and Battalini's initial stop of Cross on the street was proper. Under *Terry* and its progeny, a police officer may stop and question an individual if the officer has a reasonable suspicion that the individual is engaged in criminal conduct. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). In deciding whether reasonable suspicion existed, courts should "consider the totality of the circumstances as they were presented to the officer at the time of the encounter." *United States v. Scheets*, 188 F.3d 829, 837 (7th Cir. 1999) (internal citation omitted). In other words, reasonable suspicion is satisfied if, at the time of the stop, "specific and articulable facts," along with the officer's reasonable inferences from those facts, warrant the stop. *Terry*, 329 U.S. at 21-22.. A "hunch" or general suspicion that a suspect is engaging in criminal activity will not justify a *Terry* stop. *United States v. Brown*, 188 F.3d 860, 864 (7th Cir. 1999).

Weber and Battalini argue that they had a reasonable suspicion to believe that Cross was engaging in narcotics trafficking because Cross fit the description provided to them by the anonymous informant; Cross' presence in a high crime area; his criminal history; and because of Cross' agitated behavior upon seeing the officers and being questioned by them.

Cross does not dispute that the area surrounding Lawrence and Broadway is an area of heavy narcotics trafficking. Pl. Resp. to Def. 56.1(a)(3) Stmt. ¶ 46. He also does not dispute that he has a criminal record and has encountered Weber and Battalini in the past. *Id.* ¶¶ 16, 40. The facts of the high crime area and the fact of Cross' criminal record alone, however, do not establish reasonable suspicion. *See Brown*, 188 F.2d at 866 (the fact that the suspect was in a

4

high crime area frequented by drug dealers can be considered as part of the totality of circumstances confronting an officer at the time of the stop, but it does not by itself justify a reasonable suspicion).

The remaining two elements of the defendants' reasonable suspicion determination are the informant and Cross' behavior. Though suspicious behavior may contribute to reasonable suspicion, *see Illinois v. Wardlow*, 579 U.S. 119, 124 (2000), Cross denies that he acted as defendants claim, specifically, he asserts that he entered the liquor store to meet a friend, and he denies acting in an agitated manner.

Second, Cross argues that the informant did not actually exist. He states that the defendants cannot provide any documentation on the supposed informant, nor can they identify him. Pl. Resp. to Def. 56.1(a)(3) Stmt. ¶ 36. And, in fact, the evidence provided to the Court suggests that Cross may be justified in questioning the existence of the informant. The defendants have different, and possibly conflicting, stories about the informant. Weber testified that the informant was not a registered confidential informant. Def. Ex. D, Cross Dep. at 72. He also stated that he did not know the individual's name or where he lived, *id.* at 73, and knew only that he was a man that was a regular in the area for a short amount of time. *Id.* at 74. Battalini, when asked the informant's name, replied "I can't answer that, it's confidential." Def. Ex. C, Battalini Dep. at 56. She testified that she knew the informant and that he had provided information in the past that had led to arrests. *Id.* at 57.

Cross further argues that even if the Court is to accept the defendants' story about the informant, the information provided by the informant cannot be relied upon because it was utterly lacking in detail and basically led to a fishing expedition for any black man near the

5

corner of Broadway and Lawrence. Pl. Resp. at 3.

The Court agrees with Cross that the nature of his behavior prior to the stop and the existence of the informant are genuinely disputed. The defendants argue that the Court should not give credence to the plaintiff's denial of the existence of the informant. In considering a motion for summary judgment, however, a court "cannot make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a fact finder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (*citing Anderson*, 477 U.S. at 255). Rather, the Court must view all evidence in the light most favorable to the plaintiff. In doing so, the Court finds that a reasonable jury could conclude that the defendants lacked reasonable suspicion to conduct a *Terry* stop and therefore violated Cross' Fourth Amendment rights.

Because there are genuine factual disputes as to whether the defendants had reasonable suspicion to stop Cross on February 6, 2003, the Court does not need to address whether the seizure of the money found on Cross violated the Fourth Amendment. If the initial *Terry* stop of Cross was illegal, then it follows that the resulting search of his body and seizure of his money likewise would violate of the Fourth Amendment.

**B.     Qualified immunity**

Weber and Battalini claim that even if reasonable suspicion did not exist, they are entitled to qualified immunity. Qualified immunity shields government actors from liability when performing discretionary functions as long as they do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Berman v. Young*, 291 F.3d 976, 983 (7th Cir. 2002) (internal citation omitted). To determine whether qualified immunity is appropriate, the Court must consider whether a "'reasonable officer could have

6

believed that [his] conduct was constitutional in light of the clearly established law and the information possessed at the time the incident occurred.'" *Jones v. Webb*, 45 F.3d 178, 183 (7th Cir. 1995) (quoting *Ellis v. Wynalda*, 999 F.2d 243, 246 (7th Cir. 1993)). It is undisputed that as of February 6, 2003, any reasonable officer would have known that the Fourth Amendment requires articulable and objective suspicion that the individual had, was, or was about to engage in criminal activity before the officer could conduct an investigatory stop.

The Court has already decided that it cannot hold as a matter of law that Weber and Battalini had reasonable suspicion to stop Cross on February 6, 2003. Weber and Battalini, however, may still be entitled to qualified immunity is the Court finds that there was "arguable" reasonable suspicion. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). In this regard, the only question is whether a reasonable officer acting under the same circumstances as Cross and Battilini could have "reasonably but mistakenly" concluded that reasonable suspicion existed; if so, they are entitled to qualified immunity. *Id.*; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

In deciding the qualified immunity question on summary judgment, the Court must consider the evidence in the light most favorable to Cross. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As we have already discussed, considering all of the evidence in Cross' favor leads to the conclusion that a reasonable officer under the same circumstances would not have believed there was enough evidence to make a *Terry* stop or to seize Cross' money. Specifically, a reasonable officer could not have reasonably but mistakenly concluded that the presence in a high crime area of a person with a criminal record justified, without more, stopping and frisking that person. Defendants cite no authority suggesting otherwise. Weber and Battalini are thus not

7

entitled to summary judgment on their qualified immunity defense as to counts one and four.

## C. State claim

In addition to his federal claims arising from the February 6, 2003 search and seizure, Cross also alleges that Weber and Battalini violated Illinois law by falsely arresting him. 2nd Am. Compl., Count 6. Illinois law requires a plaintiff to produce evidence that he was restrained or arrested without having reasonable grounds to believe an offense was committed. *Meebrey v. Marshall Field & Co.*, 139 Ill.2d 455, 474, 564 N.E.2d 1222, 1231 (1990). The defendants point out that Cross does not dispute that he was free to leave at any time; though leaving would have required forfeiting his money. Pl. Resp. to Def. 56.1(a)(3) Stmt. ¶ 60. He also does not dispute that he was never arrested, charged, or handcuffed. *Id.* ¶¶ 56-59.

Cross does not respond to the defendants' arguments against his state claim. In fact, he does not make any argument in support of his false arrest claim and cites no Illinois case law. Cross devotes only one sentence to the claim and states, "For the reasons given above, as well as the numerous factual discrepancies involved, Defendant Officers' argument fails and Summary Judgment, as to Plaintiff's claims in count IV and VII, must be denied." This statement is insufficient to rebut defendants' argument; among other things, Cross has offered no authority that Illinois recognizes a civil cause of action for an improper *Terry* stop.

## 2. Counts 2, 5, and 7: June 17, 2003 Search and Seizure

On June 17, 2003, Weber and Battalini again stopped Cross in the Uptown area. The officers were on a routine patrol of Morse Avenue when they saw Cross and decided to observe him because of his criminal history. Def. 56.1(a)(3) Stmt. ¶ 75. They claim to have seen him enter into a business, come out one minute later, enter a parked car for several minutes, then exit

8

the car and enter into another business for a brief time, and then walk back towards the car. *Id.*

¶¶ 77-78. Cross denies this, claiming that he only went into a restaurant to place an order or

take-out and then he walked back out to wait for his food. Cross Dep. at 153.

The defendants stopped Cross while he was walking back to the car. They performed a

protective pat-down, they claim, because of "the high crime area" and Cross' "criminal history."

Def. 56.1(a)(3) Stmt. ¶ 79. Cross claims the search was a fishing expedition for contraband, not

for the purpose of protection. Pl. Resp. to Def. 56.1(a)(3) Stmt. ¶ 79. During the pat-down or

search, the officers discovered in Cross' front pocket a wad of cash totaling $1,140. *Id.* ¶ 80.

Weber and Battalini then began to question Cross about the car and what he was doing in the

area. They claim that Cross was agitated and that his voice was raising and lowering, which

Cross disputes. Pl. Resp. to Def. 56.1(a)(3) Stmt. ¶ 83. Weber and Battalini say they asked

Cross about the car and Cross denied having a car or being in a car, Def. 56.1(a)(3) Stmt. ¶ 84,

but Cross denies this, stating that Battalini simply took his car key and started to search his car.

Pl. Resp. to Def. 56.1(a)(3) Stmt. ¶ 84; Cross Dep. at 157. Weber then asked Cross why he was

carrying so much cash. Weber alleges that Cross first responded that the cash was for

construction supplies and then later said it was his employer's money. Def. 56.1(a)(3) Stmt. ¶

86. Cross denies this, stating that he never changed his story and only told the defendants that

the cash was for building materials for a job. Pl. Resp. to Def. 56.1(a)(3) Stmt. ¶ 86; Cross Dep.

at 163. According to the defendants, Cross refused to give the name of his employer; according

to Cross, they never asked. *Id.* ¶ 87; Def. 56.1(a)(3) Stmt. ¶ 87.

The defendants told Cross that they were going to take his money to the station to have a

dog sniff it for narcotics. Cross demanded to speak to Weber's supervisor; Weber called his

supervisor; and the supervisor told Cross he could come to the station and get an inventory slip for his money. Pl. Resp. to Def. 56.1(a)(3) Stmt. ¶ 90. Cross drove to the station and waited; Weber advised him that the money had tested positive for narcotics. *Id.* ¶ 92. It is undisputed that Cross was never arrested or charged with a crime and that he could have left the police station at any time if he was willing to forfeit his money. *Id.* ¶ 96. Later that day, Cross filed a complaint against Weber and Battalini with the Chicago Police Department's Office of Professional Standards. *Id.* ¶ 97.

## A.  Federal claims

As he did with respect to the events of February 6, 2003, Cross makes two § 1983 claims in connection with the June 17, 2002 incident: Fourth Amendment violations for illegal search and seizure (count two) and a Fourth Amendment violation for false arrest (count five). In deciding whether summary judgment is appropriate for the claims relating to the June 17, 2003 incident, the Court must engage in the same inquiry as it did for the February 6, 2003 incident. Again, we must begin our analysis with the initial stop of Cross in order to determine whether any material facts are genuinely disputed regarding whether the defendants had reasonable suspicion to stop Cross. If material facts are genuinely disputed, the Court must deny defendants' motion for summary judgment on these claims.

Weber and Battalini argue that they had reasonable suspicion to conduct a *Terry* stop. They claim that the reasonable suspicion developed as a result of three circumstances: watching Cross walk back and forth between businesses and a car; his presence in a high crime area; and Cross's criminal history. Def. Mot. at 13. Cross does not dispute his presence in a high crime area or his criminal history. As earlier discussed, however, these two facts alone do not support

10

reasonable suspicion. *See Brown*, 188 F.2d at 866 (the fact that the suspect was in a high crime area frequented by drug dealers does not by itself justify a *Terry* stop). Rather, a suspect's criminal history and appearance in a high crime area are only factors in the reasonable suspicion determination. *United States v. Lee*, 300 F. Supp. 2d 632, 635 (N.D. Ill. 2004) (though a person's presence in a high crime area is a relevant consideration to deciding whether reasonable suspicion exists, alone, it is not enough to support reasonable suspicion).

The appropriateness of the *Terry* stop is, therefore, dependent upon what, if anything, the defendants observed Cross doing on June 17, 2002. As already discussed, Cross and Weber and Battalini provide the Court with very different stories about what Cross was doing before he was stopped. In ruling on a summary judgment, the Court must view the evidence and make reasonable inferences in favor of the plaintiff. Cross states that all he did was enter a restaurant to place an order for take-out and then walk outside the restaurant to talk on his cell phone while he waiting for his food. Pl. Resp. at 7-8. These facts, even if considered in conjunction with the high crime area and Cross' criminal history, would not provide the defendants with the reasonable suspicion necessary to stop Cross. And if the stop was improper, the seizure of Cross' money as a result of the stop was likewise improper. For this reason, Weber and Battalini are not entitled to summary judgment.

**B.     Qualified immunity**

The inquiry into qualified immunity for the events of June 17, 2003 is the same as the inquiry into qualified immunity discussed earlier. Weber and Battalini are entitled to qualified immunity only if they can show that there is no genuine issue of material fact as to whether a reasonable officer acting under the same circumstances as Cross and Battilini could have

11

"reasonably but mistakenly" concluded that reasonable suspicion existed. *Anderson*, 483 U.S. at

641. Considering all of the evidence in the light most favorable to Cross, as the Court must, no

reasonable officer would have believed that there was reasonable suspicion to stop a man merely

because he had a criminal history, was in a high crime area, and walked out of a restaurant.

Thus, the defendants are not entitled to summary judgment on their defense of qualified

immunity for their actions on June 17, 2002.

### C.     State claim

Cross claims in count five of his second amended complaint that Weber and Battalini

violated Illinois law when they allegedly falsely arresting him on June 17, 2003. Cross, however,

fails to make any argument in support of the claim. The only mention of count five in his

response to the motion for summary judgment is one sentence at the end of his discussion of his

federal claims arising out of the events of June 17, 2003, which states merely that "for the

reasons stated above, as well as the numerous factual discrepancies involved, ... Summary

judgment, as to Plaintiff's claims in count V and VIII, must be denied." As discussed earlier, this

is not enough to save Cross' state law claim.

### 3.     Count 3: January 20, 2002 Arrest and Search

In count three of the second amended complaint, Cross alleges that the defendants

violated his Fourth Amendment rights by subjecting him to an unwarranted strip search on

January 20, 2002. On January 20, 2002, Weber and Battalini claim that they saw Cross approach

two individuals on the sidewalk, both of whom continued to walk past him. Def. 56.1(a)(3)

Stmt. ¶¶ 10-11. The officers recognized Cross because they had arrested him for possession of

crack cocaine on December 13, 2001. *Id.* ¶ 16. Weber, believing these actions to be suspicious,

then exited his car to be able to observe Cross more closely. *Id.* ¶ 12. Weber claims that he saw Cross speaking to a young black male, heard Cross ask the individual "you straight?" and then watched the individual hand a twenty dollar bill to Cross. *Id.* ¶ 13. At that point, Weber approached Cross. The defendants claim that Cross recognized them because they had arrested him approximately five weeks earlier. *Id.* ¶ 16. They called out to Cross, but Cross did not respond to their demands and walked away from them. *Id.* ¶ 17. Weber claims that when Cross finally stopped walking, he was acting agitated and was raising his voice. *Id.* ¶ 18. Weber arrested him for unlawful solicitation. *Id.* At the time of the arrest, Weber performed a pat-down search on Cross but did not find any drugs or weapons. Def. 56.1(a)(3) Stmt. ¶ 19. He did, however, find a twenty dollar bill. *Id.* ¶ 20.

Cross does not claim that the arrest or pat-down violated his Fourth Amendment rights (though he does dispute some of the facts leading up to the arrest). Instead, Cross' claim arising from this incident is based on what happened to him once the defendants brought him back to the 23rd District station house. When the officers brought Cross to the station, Weber told Cross he was going to perform a strip search before he put Cross in lock-up because he suspected that Cross had drugs on him. Def. 56.1(a)(3) Stmt. ¶ 27. Cross does not dispute that the search was done in a private room and only in the presence of Officer Weber. *Id.* ¶¶ 23, 26. Cross and Weber describe the search in essentially the same way: Cross was told to take off his pants and to hold out the waistband of his underwear; Weber searched the area around Cross' testicles; and Weber ran his hand up Cross' buttocks but did not go inside any body cavity. *Id.* ¶¶28-31; Pl. Ex. A, Cross Dep. at 62-64.

Cross claims that the strip search violated the Fourth Amendment because the defendants

13

lacked reasonable suspicion to believe that he had contraband on his person. The defendants argue that the search was justified because they had reasonable suspicion to believe Cross had narcotics on his person and because there was a legitimate interest in keeping narcotics out of the police station lock-up. Weber and Battalini also assert that even if reasonable suspicion did not exist, it arguably existed, and therefore, they are entitled to qualified immunity.

The Supreme Court has ruled that in judging the reasonableness of a strip search, a court must consider "the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it occurred." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The strip search of Cross was sufficiently limited in scope. Cross admits that Weber did not probe inside any body cavities. Pl. Ex. A, Cross Dep. at 64. He testified that "He [Weber] just ran his hand up the crack of my behind ... just to feel to see if there was something there." *Id.* As to the manner in which the strip search was conducted, it appears to have been done in a professional manner. Weber wore gloves, *see* Def. Ex. C, Cross Dep. at 22, and the search took "from start to finish ... maybe like seven to ten minutes." Pl. Ex. A, Cross Dep. at 65. Furthermore, the search took place in a private office in the station where no one was present except for Weber and Cross. Def. 56.1(a)(3) Stmt. ¶ 26.

Finally, with respect to the justification for the search, the Seventh Circuit has ruled that to justify a strip search, the police must have reasonable suspicion that a detainee has contraband on his person. *See Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273 (7th Cir. 1983) (body cavity search conducted without reasonable suspicion that the detainee was concealing weapons or contraband violated the Fourth Amendment); *Tinetti v. Wittke*, 620 F.2d 160, 160 (7th Cir. 1980) (per curiam) (body cavity search of a person detained over night for a traffic offense

14

conducted without probable cause to believe the individual had contraband or weapons violated the Fourth Amendment); *Doe v. Renfrow*, 631 F.2d 91, 94 (7th Cir. 1980) (per curiam) ( non-body cavity strip search violated the Fourth Amendment because reasonable suspicion was lacking). To determine whether the search was supported by reasonable suspicion, the Court must "consider the totality of the circumstances as they were presented to the officer at the time of the encounter." *Scheets*, 188 F.3d at 837. The officers argue that they had reasonable suspicion based on several circumstances: Cross' criminal history of narcotics arrests; their observations of Cross before arresting him that day; and the arrest itself. Def. Mot. at 18-19.

The Court agrees with defendants that they had reasonable suspicion based on specific and articulable facts and reasonable inferences from those fact. *Terry*, 392 U.S. at 21-22. The reasonableness of the search was further bolstered by the fact that it was done in anticipation of Cross entering into the police station lock-up. In *Bell*, the Supreme Court wrote that a detention facility is "a unique place fraught with serious security dangers." 441 U.S. at 559. The Seventh Circuit has stated that it is "well established that officials have a legitimate and substantial need to prevent arrestees from bringing weapons or contraband into ... a detention facility." *United States v. Brack*, 188 F.3d 748, 758 (7th Cir. 1999) (internal citation omitted).

Cross correctly notes that the Seventh Circuit has held that *Bell v. Wolfish* does not validate all strip searches simply because they are done in a detention setting. Pl. Resp. at 12. Cross attempts to compare his situation to that of the plaintiff in *Mary Beth G.*, where the Seventh Circuit found that a strip search of a detainee violated the Fourth Amendment. 723 F.2d at 1272. The holding in *Mary Beth G.*, however, does not save Cross' claim. The plaintiffs in that case were arrested for traffic offenses and were taken to a detention center only because they

15

had outstanding parking tickets or because they were unable to produce a driver's license. *Id.* at

1267 n. 2. The key to the Seventh Circuit's ruling was the fact that the police officers did *not*

have reasonable suspicion that the plaintiffs had weapons or contraband on their bodies. *Id.* at

1272 ("ensuring the security needs of the City by strip searching plaintiff-appellees was

unreasonable *without* a reasonable suspicion by the authorities that either of the twin dangers of

concealing weapons or contraband existed").

In this case, Weber and Battalini had reasonable suspicion to believe that Cross might be

hiding drugs on his body. This, together with the reasonable place, manner, and intrusiveness of

the search, entitles the defendants to summary judgment on count three. *See Brack*, 188 F.3d at

758. For this reason, the Court does not have to address the defendants' claim of qualified

immunity.

4.    **Count 8: Respondeat Superior**

Because the Court has granted summary judgment in favor of the defendants on Cross'

state law claims, the City is entitled to summary judgment on his respondeat superior claim.

5.    **Count 9: *Monell* claim**

In Cross' response to defendants' motion for summary judgment, he withdraws his

*Monell* claim against the City of Chicago. Pl. Resp. at 1.

6.    **Count 10: 745 ILCS 10/9-102 Claim against the City of Chicago**

In count ten of his second amended complaint, Cross claims that the City of Chicago

should be liable for any judgment he may win against Officers Weber and Battalini because they

were acting for the City when the stopped him, pursuant to 745 ILCS 10/9-102. The City does

not dispute that Weber and Battalini were acting within the scope of their employment on

February 6, 2003 and June 17, 2003; summary judgment is therefore denied as to count ten.

## Conclusion

For the foregoing reasons, the Court grants the defendants' motion for summary judgment [docket no. 38] as to counts three, six, seven, eight, and nine but denies the motion as to counts one, two, four, and five, and ten. The parties are reminded that the final pretrial order is due on December 1, 2004, and that it must include both motions in limine and responses, to be exchanged by the parties before that date. The final pretrial conference is set for December 3, 2004 at 11:00 A.M.

_____
MATTHEW F. KENNELLY
United States District Judge


Date: Nov. 19, 2004